UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATALIE P.,[1] | ) |
| | ) No. 21 CV 2784 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) April 30, 2024 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Natalie P. seeks disability insurance benefits ("DIB") asserting that she is disabled by mental impairments. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her disability applications. For the following reasons, Natalie's remand motion is granted:

**Procedural History**

Natalie filed a DIB application in September 2018, alleging disability beginning the previous month. (Administrative Record ("A.R.") 13, 157-63, 178-97.) At the administrative level, her application was denied initially and upon reconsideration. (Id. at 13, 69-76, 78-89.) Natalie appeared with her attorney at the November 2020 telephonic hearing before an Administrative Law Judge ("ALJ"), at which she and a vocational expert testified. (Id. at 33-68.) Later that month, the ALJ

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Natalie's first name and last initial in this opinion to protect her privacy to the extent possible.

ruled that Natalie is not disabled. (Id. at 13-26.) The Appeals Council denied Natalie's request for review, (id. at 1-6), making the ALJ's decision the final decision of the Commissioner, *see Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). She then filed this lawsuit seeking judicial review, and the parties consented to this court's jurisdiction. *See* 28 U.S.C. § 636(c); (R. 5).

## Analysis

Natalie argues that the ALJ erred when: (1) assessing the severity of her mental functioning, including during consideration of the paragraph B criteria and the assessment of the residual functional capacity ("RFC"); and (2) evaluating the opinions of a treating psychiatrist, the consultative examiner ("CE"), and a treating therapist. (R. 12, Pl.'s Mot.) When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision is supported by substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). However, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (internal quotation and citation omitted). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a

claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). "All [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review.'" *Warnell v. O'Malley,* 97 F.4th 1050, 1054 (7th Cir. 2024). Having considered the arguments and record, the court concludes that remand is warranted.

A.   **Mental Functioning**

Natalie argues that despite "significant deficits arising from several psychiatric impairments—some of which have required hospitalization," the ALJ improperly found that "a handful of accommodations would make work sustainable." (R. 12, Pl.'s Mot. at 6.) Natalie asserts the ALJ committed "two fatal flaws" because his reasoning lacked "meaningful analysis" and he "fail[ed] to consider [Natalie's] deficits within the context of full-time employment." (Id.) Natalie claims these errors occurred at step three when the ALJ considered the paragraph B criteria and again before step four when crafting the RFC. (R. 12, Pl.'s Mot. at 7-13.)

To establish listings-level severity at step three, a claimant is required to prove she has marked restrictions in at least two of the paragraph B criteria. *See* 20 C.F.R. § 404.1520. Even if a claimant cannot satisfy the listings criteria, the ALJ "must incorporate a claimant's limitations," including those that are not severe in developing the RFC. *See Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020); *see also Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009) (finding that when assessing RFC, ALJ must "evaluate all limitations that arise from medically

3

determinable impairments, even those that are not severe, and may not dismiss a line of evidence contrary to the ruling"). An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. *Id.* § 404.1545(a)(1); *see also Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

Here, the ALJ found that Natalie's bipolar disorder, PTSD, and generalized anxiety disorder are severe but do not cause marked limitations. (A.R. 19-21.) When considering the severity of Natalie's impairments, the ALJ evaluated the paragraph B criteria and determined that she has moderate limitations in all four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace ("CPP"); and adapting or managing oneself. (Id. at 21.) In so finding, the ALJ noted that Natalie has memory issues but only moderate limitations in in the first functional area because she "maintains a good fund of knowledge" and exhibited "good memory" during the CE's evaluation. (Id.) The ALJ likewise assessed Natalie as having a moderate limitation in interacting with others, acknowledging Natalie's anxiety and report that she rarely sees friends but emphasizing her "friendly manner." (Id.) The ALJ also deemed Natalie's CPP limitations to be moderate, noting her report of "a short attention span and difficulty completing tasks" and the CE's findings that Natalie "struggled to maintain concentration" throughout the evaluation but emphasizing her "overall . . . ability to concentrate on directions was fair." (Id.) Last, the ALJ found Natalie had a moderate limitation in adapting and managing oneself, citing the CE's finding that

4

Natalie has "poor tolerance for stressors in the workplace." (Id.) The ALJ explained that he accounted for these deficits in the RFC by limiting the complexity of Natalie's work tasks, her level of interaction with others in the workplace, the focus and pace required at work, and the instability and unpredictability in the work setting. (Id.)

Natalie complains that the ALJ's paragraph B analysis amounts to "little more" than an acknowledgement of her deficits and an insistence that he accommodated her limitations appropriately. (R. 12, Pl.'s Mot. at 7-13.) The court agrees. While the ALJ discussed evidence suggesting significant mental deficits at the beginning of his step-three analysis, he largely ignored this evidence when evaluating the paragraph B criteria. (A.R. 20-21.) For example, at the outset of his discussion, the ALJ acknowledged Natalie's reports that she has difficulty with her memory, "retaining what she hears," and completing tasks because of CPP issues. (Id. at 21 (citing id. at 217, 500-01).) The ALJ also noted Natalie's reports to the CE that she had 13 prior psychiatric hospitalizations through 2016, 4 suicide attempts, and suffered 2 sexual assaults. (Id. at 20; see also id. at 984-86, 1024-30.) The ALJ next addressed objective medical evidence showing she visited the emergency department a number of times in mid-2018 and June 2019 for syncope events stemming from anxiety and conversion disorder. (Id.) The ALJ noted that Natalie stayed at a residential mental health treatment facility for two weeks in October 2018 "for mood and anxiety management," and then transitioned to an outpatient center to address "restrictive eating and disordered eating thoughts." (Id. (citing id. at 1024-98).) And the ALJ mentioned that she participated in an outpatient program in

5

August 2019, (id. (citing id. at 1476-1765)), and was hospitalized again in October 2020 because she suffered symptoms of "depression, anxiety, suicidal thoughts and increasing self-harming behavior," (id. (citing id. at 2225-99)).

But when considering the paragraph B criteria, the ALJ glossed over much of this evidence in favor of evidence supporting his ultimate conclusion. The ALJ cited selective evidence from the CE's opinion, which he found "generally persuasive," to substantiate his analysis. (Id. at 21.) Yet the ALJ did not explain how Natalie could sustain full-time employment given the CE's comprehensive findings and conclusions that Natalie: (1) is diagnosed with generalized anxiety disorder and severe, recurrent major depressive disorder; (2) left two jobs as a teacher's assistant in 2017 and again in 2018 because of stress; (3) exhibited a "depressed [mood] with congruent affect" during the evaluation; (4) "struggled to maintain concentration throughout the evaluation process"; (5) has "fair" remote memory of childhood data, "fair" ability "to concentrate on and understand directions," "poor" ability "to carry out tasks with reasonable persistence and pace," "limited" ability "to respond appropriately to supervisors and coworkers," and "very poor" ability "to tolerate stressors in the workplace"; and (6) is unable to manage funds. (Id. at 500-04.) Simply put, the ALJ failed to connect the evidence—which shows significant mental impairments and resulting deficits—to his conclusion that the severity of Natalie's mental functioning is only "moderate."

The ALJ also failed to provide adequate explanation for the RFC he assessed. Before step four, the ALJ said he accounted for effects of Natalie's mental impairments by limiting her to:

> understand[ing], remember[ing], and carry[ing] out simple instructions; [p]erform[ing] simple, routine, and repetitive tasks but not at a production rate pace such as an assembly line; adapt[ing] to routine changes in the workplace that are infrequent and easily explained; [and] interact[ing] occasionally with supervisors and coworkers, and never with the general public.

(Id. at 22.) When crafting this RFC, the ALJ considered testimony that Natalie engages in "constant[] counting in her head," which "mak[es] it difficult to concentrate" and has difficulties arising from syncope episodes and fatigue. (Id.) The ALJ also cited opinion evidence, including the state psychological consultants' "less persuasive" opinions that Natalie does not suffer from "severe" mental impairments, as evidenced by "no more than mild limitations of function." (Id. at 23.) The ALJ discounted the persuasiveness of these opinions based on treating psychiatrist Dr. Brian McFaul's opinion that Natalie experiences panic attacks once per week, which "result in [a] complete inability to function independently outside the area of [her] home" and struggles with OCD symptoms and "recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress." (Id. (citing id. at 2303).) The ALJ afforded Dr. McFaul's opinion only partial persuasiveness, however, because Natalie's psychotropic medications do not have "notable" side effects and, while she would be off task more than 30% of a workday on a "BAD day[]," Dr. McFaul did not indicate how often Natalie would experience bad days. (Id. at 23-24 (citing id. at 2303-04) (also noting mental RFC form Dr.

7

McFaul completed largely consisted of "checked-off choices," even though Dr. McFaul added annotations to the form).)

The ALJ next evaluated the CE's "generally persuasive" opinion, noting that the CE observed Natalie exhibiting a "depressed mood" with "fairly congruent" affect and acting in a "cooperative" and "friendly" manner. (Id. at 23.) The ALJ further noted the CE's findings that Natalie had difficulty "carry[ing] out tasks with reasonable persistence and [her] pace was poor" and was limited in her ability to "maintain concentration throughout the evaluation process." (Id.) Natalie's treating therapist Patricia Nolan also submitted an opinion, but the ALJ dismissed it as "not persuasive" because Nolan is not an "Acceptable Medical Source" under Social Security regulations and, according to the ALJ, her opinion does not sufficiently credit Natalie's "response to treatment." (Id.) Nolan opined that she saw a decline in Natalie's functioning, which led to an inpatient hospitalization in October 2020. (Id. (citing id. at 2301 (noting Natalie experienced "irritable behavior, self-destructive behaviors, diminished concentration, hypervigilance, panic attacks and sleep problems").) The ALJ acknowledged Natalie's "five-day hospital admission for suicidal thoughts," but found that she "responded positively" to treatment, including "group therapies" and medications. (Id.) Nolan also opined that Natalie's PTSD from suffering two sexual assaults as an adult and unresolved childhood trauma "impair[s] her ability to perform daily tasks." (Id.) Although Nolan provided examples of ways trauma interferes with Natalie's functioning, such as through short-term memory loss, cognitive dysfunction, and difficulty concentrating, the ALJ dismissed the

8

opinion because Nolan concluded that Natalie would not be able to "perform work-related activities on a sustained basis," which is an issue reserved for the Commissioner. (Id. (citing id. at 2302).)

In light of this analysis, the ALJ determined that Natalie could perform full-time work with nonexertional limitations. (Id. at 22-24.) In so finding, the ALJ relied largely on Natalie's supposed good response to treatment, lack of medication side effects, and certain of the CE's findings, despite Natalie's ongoing and continued struggle with significant mental deficits and the CE's opinion supporting the severity of such deficits. (Id.) And while the ALJ assigned partial persuasiveness to treating psychiatrist Dr. McFaul's opinion, which endorsed symptoms of "loss of interest in almost all activities," "appetite disturbance with change in weight [and] sleep disturbance," "psychomotor agitation or retardation," "decreased energy, feelings of guilt or worthlessness," and "difficulty concentrating or thinking," (id. at 23 (citing id. at 2303), the ALJ did not explain why the portions of this opinion he found persuasive did not require greater restrictions, particularly in terms of off-task time. Indeed, Dr. McFaul opined that Natalie would be unable to function independently outside of her home at least once a week because of debilitating panic attacks. (Id.)

As such, the ALJ's RFC assessment lacks the support of substantial evidence because the court cannot discern the path of reasoning between the evidence and the ALJ's conclusions. The court is mindful that it cannot substitute its judgment for that of the ALJ's or reweigh evidence. *Deborah M.*, 994 F.3d at 788. But here the court cannot conclude that the ALJ's analysis "say[s] enough to enable a review of

9

whether the ALJ considered" the combined effect of Natalie's mental impairments and limitations on her ability to work. *See Lothridge*, 984 F.3d at 1233.

## B. Medical Opinion Evidence

As discussed above, the ALJ's evaluation of treating psychiatrist Dr. McFaul's opinion, the CE's opinion, and treating therapist Nolan's opinion also requires remand. The ALJ found the CE's opinion generally persuasive without addressing the comprehensive nature of the findings and conclusions supporting the significance of Natalie's mental deficits. The same is true with respect to the ALJ's finding that Dr. McFaul's opinion is only partially persuasive. The ALJ failed to explain why the parts he found persuasive—which endorsed significant mental symptoms—did not require greater restrictions. Finally, the ALJ did not adequately explain why Nolan's opinion cannot be used to shed light on the severity of Natalie's mental impairments. Given Nolan's status as a nonmedical source, the ALJ was not required to articulate how he considered evidence from her under 20 C.F.R. §1520c(d). Nor was the ALJ required to accept her opinion that Natalie was not capable of sustaining full-time work, as that issue is reserved for the Commissioner. Nonetheless, an ALJ may still receive evidence from a nonmedical source, *see* 20 C.F.R. § 416.913, and that evidence could be used to show the consistency or supportability of opinions from medical sources such as Dr. McFaul or the CE, both of whom endorsed significant mental deficits, (see R. 12, Pl.'s Mot. at 14-15).

10

## Conclusion

For the foregoing reasons, Natalie's remand request is granted, and the matter is remanded for further proceedings at the administrative level.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**